We'll hear the first case on the day calendar, State Farm v. Parisian. Good morning, Your Honors. My name is Mark Furman, and I represent the medical providers who are the appellants in this case. The appellants are being enjoined by an order from the district court, the Eastern District, from pursuing some 2,300 state collection actions against State Farm Insurance Company for services that were rendered to State Farm Insurance. That order was issued towards the commencement of a civil RICO action, or in the nature of a RICO action, seeking largely clawback of monies that were previously paid to these providers, plus declaratory relief that they don't have to, that State Farm does not have to provide them. And probably treble damages, too, while we're at it. I'm sorry? And probably treble damages, too. Oh, yes, under RICO, sure. The injunction is basically to preserve the status quo pending the resolution of this case and, therefore, to avoid the necessity of having to expand the clawback aspect of this case, which would be true if there were payouts. So stop the payouts, and then at least until this case can be resolved. And so why isn't this an aid of the court's jurisdiction as an exception to the Anti-Injunction Act? First of all, that's the legal issue, I think. To summarize the immediate issue, the immediate response is, as you well know, under 2283, the prohibition on Federal injunctions is absolute unless it's within those three exceptions. Right. And so the only exception that arguably would apply is the aid of the jurisdiction. Right. Now, that exception historically has divided and been limited to in rem proceedings. And these are clearly in rem proceedings. There are in personam cases out there. It's not just in rem. Well, there have been on occasion. They cited, I believe, one case that's Baldwin. But, you know, this case is different. This isn't a question of just jumping in and defending particular claims on the merits. This is a claim of a scheme of fraud that goes beyond individual cases and subsumes all of the cases. It's a different theory. And their position is that they need to have this injunction in order to be able to have the prove the elements of fraud in a comprehensive way, without, also without having, also to assist on their remedy later on so they don't have to go through clawbacks. So it's not like they're parallel cases. They're not parallel cases. The theory of this case is different. And you can't prove the overall fraud, and it certainly wouldn't be worth it in a particular iteration of the 2,300 cases that have been filed. Right? Is there anything that I've said that's wrong? Well, I think it doesn't take into account what the fraud is in the case. If you look at the complaint, this is not a complaint that says everything that this was, that these people have done is fraudulent. It says these medical services are part of a predetermined treatment protocol that everybody gets, and that most of the time it's not appropriate. It also says some of the time it is. If you look and exhibit one of their complaint, they have, and it's part of the special appendix, they have a chart and they have X'd out when it's appropriate. If the individual State court cases were to proceed to judgment, would that not be res judicata or collateral estoppel as to the Ricoh case? No, I don't believe it would be, because it would be. You wouldn't argue that State Farm, when I'm asking a question, please, just wait. You would not argue in that event that State Farm was precluded from pursuing those issues in those cases? It would depend upon the findings in the. It could be. They could be res judicata, then. It probably couldn't be res judicata. It might have a collateral estoppel effect if there was a determination. And if it might have collateral estoppel effect, then why isn't the in aid of courts jurisdiction exception invoked? Well, I think the cases are very clear historically that the fact that a State court. What's the reasoning on why the exception doesn't apply? I'm sorry? What is the reasoning? You keep going back to cases, but what is the reasoning on why allowing the State court cases to proceed would not interfere with the district court's jurisdiction? Because it has nothing to do with the jurisdiction of the court. It's necessary to aid the jurisdiction of the court. The cases have said, this Court has said, there's no reason why we can't have simultaneous decisions at the same time. One may have collateral estoppel over another. And that's been the case the entire time. The what's made reference to below is the fact that these are insurance proceeds. And there have been some insurance proceeds cases that have raised the questions of whether or not. The district court also found that the pattern of conduct in how the claims were processed, how they were denied, that that provided substantial evidence of fraud and if you looked at the cases individually, you wouldn't be able to see the pattern. How do you respond to that polling of the district court? I don't believe that. I think that that is the way that these cases are all litigated, all in the entire no-fault system. And he focused on this particular one. But they only have a certain amount of lines per claim that they can litigate at a time. There was no reason for them. What's the advantage to the public of 2300 separate litigations as opposed to an overall litigation in which these cases can be assessed as to their fraudulent character? Each claim can be assessed as to its fraudulent character. I'm sorry. I didn't hear the answer to the question. What is the advantage to the public of having 2300 cases as opposed to the one that's been brought as opposed to a single case that assesses whether the various claims are fraudulent or not? And why wouldn't a comprehensive litigation such as the one that's been brought in the Eastern District accomplish the very goals of sorting out the extent to which there's fraud here? Because that's assuming that the ---- Those cases that are brought are for like $3,000 and $4,000 each. Right? Right? So a good amount of fraudulent claim and prove the overall fraud in one of those cases, it doesn't seem to make sense. It may not apply to the next case. That's correct. You'd have to relitigate it again. That's why we have a no-fault system. And the system ---- If it's not abused, yes. If it's not abused. Let me just put ---- The claim here is that it's being abused in a massive way in which predetermined outcomes are set by a pattern of fraud. May I just make one point on this, because my time is running? The great significance of this is that this allegation of a pretreatment, predetermined treatment protocol, which counsel, which State Farm Ministry says is unique, we've done the research, this same allegation is made in 36 reported decisions that we know nationwide right now. And what's going to happen is if this injunction is permitted to stand, there's going to be a plethora of other cases coming in, and the systems that are behind these are going to grind to a halt because they're going to have application upon application of carriers coming in saying it's not medically necessary, we can prove it's not medically necessary, we want everything to be, we're going to call it all fraudulent because it's all predetermined because they're all the same, and therefore ---- You don't call them fraudulent. You have to prove that they're fraudulent. No, you just have to allege that they're fraudulent, right? And then you've got to stay, and then you don't get paid for the next two years. That's right. They haven't proven anything. As a matter of fact, in the discovery so far, we haven't had one bit, one iota of allegations regarding this. I remember seeing some charts in the papers. But the point is it's just on the proof. It's just on the allegation that they were able to do this. There's been no adjudications. There's been no findings. May I add one more thing? That is that in the State courts, and it's in my reply brief, State Farm has, in one instance at least, gone on and gone and done its own declaratory judgment in the State court regarding the services that are the subject of another State court action. In other words, they didn't ---- You have some time for rebuttal? Yes. We'll hear from the other side. Thank you. May it please the Court. Jonathan Marks on behalf of plaintiffs. Applee, State Farm. The defendants in this case used 2,300 State court suits to further an ongoing scheme to commit insurance fraud through a medical clinic in New York. These State court suits are the means by which defendants collect on fraudulent claims and expose State Farm to repeated injuries. Just as importantly as this Court has noted, the piecemeal nature of these suits makes it practically impossible ---- Why practically impossible? Why is it practically impossible to allege, as you have in Erico's suit, that there is this scheme and then you can claw back all the money at the end of the day? I mean, you're going to be claw backing a lot of it already, right? Some of these things are already done. The reason, Your Honor, it is practically impossible is because if you look at each one of these individual suits as typically brought based on one patient, one date of service, one claim, that's all that's presented in each one of these individual suits. And if you look at each one of those suits and each one of those claims, in and of itself, it may look perfectly reasonable. It may look perfectly legitimate. All you've got is an individual patient. However, when you see hundreds of patients, all of whom are diagnosed with exactly the same condition, receiving exactly the same treatment, receiving exactly the same services, it is this pattern that demonstrates the fraudulent nature of the treatment. So what's going to prevent you from arguing all that in the Rico suit and then recovering? I'm not sure I understand. Well, what limits us, Your Honor, is that in order to get there, there are, of course, the requirements of 9b. We have to come forward with a complaint that supports this theory. And we've done that here. And if you'll take a look at our complaint, we haven't just said, look, they just happen to have a clinic and this just happens to be a pattern. We can't just say. But I think the question that's being asked of you is different. I think the question that's being asked, assuming you're successful in your fraud, why is it necessary to enjoin the suits from going forward and relegating you to a clawback? Why doesn't that and not relegating you to a clawback? In other words, what's wrong with the clawback? I think that's a question you've got to answer here. Okay. Well, and I would say a few things. One, the suits themselves, the fact that we are being subject to suits in which we are unable to establish the fraud, in and of itself is an injury. In and of itself is a harm. It is in and of itself part of what this scheme is about. Right? And if we look at, and among the exceptions that we've talked about in our brief is the exception. How is that going to have an impact on the RICO case? In other words, ordinarily you'd bring your RICO case, you'd win your RICO case, you'd get a big judgment, and then you'd get to collect. Why is that not sufficient? What is it about these piecemeal litigations that is going to prevent you from collecting on your ultimate RICO judgment? Well, certainly one component, Your Honor, is that there is a risk. There's the risk that has been identified by the district court has said here, look, these may be res judicata, all right, and the district court has found that they're likely to be res judicata, and there's certainly a risk that we will be precluded at some point down the road from being able to recover for them. And so that is certainly the opportunity to claw back is an issue. That's one. Two, the fact of being subject to these suits in and of itself is an injury. Right? But that's not the point. There's an Anti-Injunction Act, and it doesn't say, but if there's an injury, then you get an injunction. Right? No. There's an Anti-Injunction Act that says you don't get an injunction of a State court proceeding except for three exceptions. And the exception that we're talking about is in aid of jurisdiction. And so how is the jurisdiction of the Eastern District of New York compromised by these other suits? That's really the simple question it seems to me. So res judicata, is that clear to me that res judicata will prevent the RICO case from going forward? Do you think that you will not be able to establish a pattern of fraud in the Federal case if these State cases proceed? We will. You'll be precluded from doing that? Well, we will certainly be limited from doing that, Your Honor. Well, the question I think is largely whether it's necessary to effectuate a judgment. If it's not, if it's, if it's, if it's. There is no judgment, is there? Eventually. Well, eventually, right? Right.  So it's, it's, so. I mean, aid of jurisdiction doesn't, isn't jurisdiction in the subject matter jurisdiction sense. In the same way. I'm confused. Are you, are you moving on the second exception or the third exception? We, so we, we, we are, we are before this Court on both the first exception and the second exception. So, but I'll address my questions to, to, to each exception separately. So we are, we, we, the, the district court ruled based on the in aid of jurisdiction exception. In this Court, we are arguing both that we are entitled to the injunction both under the in aid of jurisdiction exception and under the expressly authorized exception. So that's, that's different. That's not. Okay. So expressly authorized, you think the RICO statute expressly authorizes injunctions of State proceedings? Under the particular circumstances of this case. And do you have any cases involving the RICO statute being interpreted as expressly authorizing injunctions on State proceedings? Not of State court proceedings, Your Honor. But we believe that it does meet the standards for the expressly authorized  Because it's, it authorizes injunctions? Because it authorizes, because it meets the test of Mitcham v. Foster. It, it, it, it. Expressly authorized by an act of Congress. That's the exception. Right. And you think RICO has expressly authorized injunctions of State court proceedings? Your Honor, if it, the statute itself does not have to, by its terms, expressly authorize an, it does not in its, in its own language have to expressly authorize the injunction or, or explicitly refer to the Anti-Injunction Act. It need only. Do you have any cases where RICO has been so interpreted? We do not, Your Honor. Okay. But we do believe that. Back to the aid of jurisdiction. Sure. Because I think that's your stronger one. All right. And, you know, whatever. And, and, and the question is what kind of jurisdiction has to be, it's, I think it's the ability of the court, assuming that it's able to render a judgment in your favor, to be able to effectuate that judgment. And that's, that's really what it's about. And then if you turn to that and you say, well, the clawback is available, then why would, why would we want to find an exception? If the clawback's available, then the judgment can be effectuated. Well, for. Clawback is available, right? I mean, that's what you're doing now. Well. That's what you're seeking, what you plan to do for the ones that have already been adjudicated. That, that is true. But again, as the district. You're saying you're harmed. That's the one thing. You're harmed by the actual judgments in those cases. And then secondly, are you saying that those judgments are potentially uncollectible? They are potentially uncollectible. That's correct, Your Honor. Because, because number one, there's, as I've noted, there's, look, the district court found that they are going to be res judicata. And in other words, that we will not have the opportunity to seek them again. And we can expect, I think as the Court pointed out, that defendants will argue that they're a res judicata. And at a minimum, we can expect the district court is going to have to resolve on a case-by-case, an individual case-by-case basis whether each one of those has a res judicata effect. So suddenly you are burdening the district court with the process of figuring out whether each one of the 2,300 cases is, has a res judicata preclusive effect. And that could happen, could play out here. Do you think an individual no-fault proceeding in state court is going to have a res judicata effect on a RICO claim in federal court? I think that there is. Any evidence of that? Has it ever been found? A RICO case has been deemed precluded by a state court no-fault action resolution? At this point, Your Honor, we, we, we, look, if, if, if there is no res judicata effect, then this certainly becomes a harder case. But at this point, what we know, and what we, all we know is that there is a real risk. There's also a risk of issue preclusion, even if there isn't a risk of claim preclusion, right? Absolutely. And, and given that risk, the district court did not abuse its discretion, in our view, in concluding that that risk was serious enough that it needed this injunction to preclude, to prevent that consequence from inhibiting its ability to decide the case in front of it. And one of the, the, the, the order that it so, sought to enter was to protect its ability to decide whether or not, to decide the declaratory relief that was sought as part of our complaint. And in order to do that, it needed, it needed to know that it had, that these decisions had not been interfered with or had been resolved in some way by these state courts. So let me make sure I understand this, then. Your view is that the Anti-Injunction Act allows a Federal court to enjoin a state court because the state court proceeding might have a res judicata effect? Under, under the circumstances, the district court, well, here the district court concluded that. That's a pretty broad, pretty broad interpretation of innate of jurisdiction, it seems to me. You got any cases where the, the fact that there might be a res judicata effect or a preclusive effect is a sufficient basis to conclude that the Anti-Injunction Act doesn't apply? Not in that particular circumstance, Your Honor, but I think it is fair to say that where the district court, under the circumstances, believed that there was a serious risk or, or, look, the district court here concluded that it felt that those proceedings were going to be res judicata. That was its finding. And it concluded that that, that conclusion was going to interfere in its ability to reach a judgment and to reach a conclusion as to the declaratory judgment action that was before it. And they, and that conclusion was not an unreasonable finding under the circumstances for it to be. But that would be true of any case in which there's likely to be a preclusive effect, right? That means any case, any Federal case in, that involves a parallel or similar State case, the Federal judge would be authorized to enjoin the State case, right? What's unique, however, about this case, Your Honor, is that the, the State court proceedings were such that they were, they were not, they were being decided, but they were not, as the Court recognized, State Farm was not being given a fair opportunity to demonstrate its case. And it wouldn't be preclusive, would it? Isn't that one of the elements that would have to be met to make it preclusive? Potentially true, Your Honor, but, but again. It's just potentially true. It just seems like, yeah, this is a hassle.  But there's an anti-injunction act that says you don't get to do this, except in very rare instances. The fact that clawback might be a pain in the neck, the fact that these other State proceedings might be a pain in the neck, doesn't seem to me to be enough to meet the inactive jurisdiction element or exception to the, to the statute. Well, I would say this, Your Honor, that under the circumstances here, the clawback the court, the district court concluded, and we think rightly so, that clawback was not possible here, based on its conclusion that there was a residue, that these were going to be res judicata. And based on that conclusion, it felt that we were going to be deprived of the opportunity to fully present our declaratory judgment case. And therefore, it was necessary in aid of jurisdiction. All right. Mr. Furman, we'll hear your rebuttal. Thank you. Mr. Sullivan's inquiry about the consequences here, Judge Glasser makes it very clear what he thinks the harm of not having the stay is. He says, if State farm prevails on the merits, it will go uncompensated for the time and expense wasted in the State proceedings and the arbitrations. Well, my understanding of the law is that that's not something that can be recompensed. That's recompensed. That's the American rule. That means that you've got to do that. I'm not sure if you lose in a RICO case, then it wouldn't be. And that may also be the case. But let's just, but he's saying so. They've spent all this time. And then he goes on, and in terms of the balancing of the hardships, he says that it's exactly the same question. He says that because there is, it doesn't need not raise for long the irreparable harm factors discussed above, tip the equity squarely in State farms' favor. So he doesn't even independently consider it. What do you do with the language in Atlantic Coast, the Supreme Court case, 1970? Which said that some Federal injunctive relief may be necessary to prevent a State court from so interfering with the Federal court's consideration or disposition of a case as to seriously impair the Federal court's flexibility and authority to decide that case. Well, I, first of all, may I just point out that that is dicta. It's dicta. But I understand that that is the argument that has been, or the language that we've had. But that's not going to affect it. Scalia. They describe, the Court describes it, described this particular exception as broad. How many of these 2,300 cases are going to go forward by the time that this case gets moving? I mean, the backlog in no fault is something like 4 years now. I mean, these cases, some of these cases today are from 2013. They haven't even reached the trial calendar yet. So. Breyer. I mean, is it possible to request a stay in the State proceedings? It is, right? Scalia. State Farm could request a stay. Breyer. That's what I mean. Either party could request a stay, correct? Scalia. They chose not to. As a matter of fact, in other cases, they have requested a stay. And in this case, they decided to ask the Federal court for it. But I don't see how that's the case, because, how it affects it. Because either way, these cases are patient-specific. They are. Because they're based upon the medicine. And State Farm itself says it's not every case. Sometimes this is the right treatment. It's just that it's a protocol. Kennedy. A clerk is right twice a day. Any clerk. Well, what it is, State Farm says one size doesn't fit all. But it fits some. And so the question is, well, if that's the case, why can't we figure out, like, in a litigation, which ones it fits, which ones it doesn't fit. And for those that it doesn't fit, we'll be liable. And as far as getting the judgment is concerned, I have to add, I mean, this is a slow-moving situation here. There's lots of carriers. The backlog, as it is, as I'm sure you know in State court right now, is phenomenal. Other carriers are still paying them from cases from 2013, 2014. I mean, there's going to be a flow of a steady flow of income as time goes on, in addition to the interest that they get. So there's going to be plenty of assets should they be successful at the trial in this action. All right.  Well-reserved decision.